08-2626-cv
*Daniel Gross v. M. Jodi Rell*

UNITED STATES COURT OF APPEALS

For the Second Circuit

_____

August Term, 2008

(Argued: May 20, 2009          Questions Certified: October 27, 2009

Certified Questions Answered: April 3, 2012          Final Submission: May 29, 2012

Decided: September 25, 2012)

Docket No. 08-2626-cv

_____

DANIEL GROSS,

*Plaintiff*,

CAROLYN DEE KING,

*Plaintiff-Appellant*,

—v.—

M. JODI RELL, GOVERNOR, STATE OF CONNECTICUT, IN HER OFFICIAL CAPACITY; MAGGIE EWALD, FORMER ACTING LONG-TERM CARE OMBUDSMAN OF THE CONNECTICUT DEPARTMENT OF SOCIAL SERVICES, IN HER OFFICIAL CAPACITY; THOMAS P. BRUNNOCK, PROBATE JUDGE FOR THE DISTRICT OF WATERBURY, IN HIS INDIVIDUAL CAPACITY; KATHLEEN DONOVAN, IN HER INDIVIDUAL CAPACITY; JONATHAN NEWMAN, IN HIS INDIVIDUAL CAPACITY; GROVE MANOR NURSING HOME, INC., IN ITS INDIVIDUAL CAPACITY,

*Defendants-Appellees*,

_____

Before: JACOBS, *Chief Judge*, STRAUB AND HALL, *Circuit Judges*.

_____

On return from the Connecticut Supreme Court after the answer of questions certified by this Court on October 27, 2009. The Connecticut Supreme Court held as a matter of Connecticut law that conservators enjoyed quasi-judicial immunity when acting with the approval or authorization of the Probate Court and that court-appointed attorneys for conservatees do not enjoy quasi-judicial immunity. It also advised that the Probate Court does not have the authority

1

to issue orders to entities not a party to its proceedings and so such entities taking care of conservatees would not be acting as agents of the Probate Court. We hold that the scope of federal quasi-judicial immunity for conservators and court-appointed attorneys for conservatees is the same as Connecticut quasi-judicial immunity and that the nursing home in whose care the conservator placed the plaintiff-conservatee is not entitled to quasi-judicial immunity. The judgment of the District Court is therefore **VACATED** and the case **REMANDED** for further proceedings not inconsistent with this opinion.

_____

SALLY R. ZANGER, Connecticut Legal Rights Project, Inc., Middletown, CT, for *Plaintiff-Appellant*.

GREGORY T. D'AURIA, Associate Attorney General for the State of Connecticut (Richard Blumenthal, Attorney General, Jane R. Rosenberg, Assistant Attorney General, Clare Kindall, Assistant Attorney General, *of counsel*), Hartford, CT, for *Defendants-Appellees M. Jodi Rell, Maggie Ewald, and Thomas P. Brunnock*.

RICHARD A. ROBERTS (Nadine M. Pare, James R. Fiore, *of counsel*), Nuzzo & Roberts, L.L.C., Cheshire, CT, for *Defendant-Appellee Kathleen Donovan*.

LOUIS B. BLUMENFELD (Lorinda S. Coon, *of counsel*), Cooney, Scully and Dowling, Hartford, CT, for *Defendant-Appellee Jonathan Newman*.

JEFFREY R. BABBIN, Wiggin and Dana LLP, New Haven, CT, for *Defendant-Appellee Grove Manor Nursing Home, Inc.*

_____

STRAUB, *Circuit Judge*:

On October 27, 2009, we certified questions to the Connecticut Supreme Court regarding the scope of Connecticut quasi-judicial immunity for conservators and court-appointed attorneys for conservatees, as well as regarding the role of such actors and of nursing homes that house conservatees in the Connecticut system. On April 3, 2012, the Connecticut Supreme Court answered our certified questions in an opinion, holding as a matter of state law that conservators are entitled to quasi-judicial immunity when their actions are authorized or approved by the Probate Court and that court-appointed attorneys for conservatees are not entitled to quasi-

2

judicial immunity. It also described the role of nursing homes housing conservatees in the Connecticut system and suggested that such entities should not be entitled to quasi-judicial immunity.

We now consider whether the conservator for an elderly conservatee, his court-appointed attorney, and the nursing home that housed him in allegedly abusive circumstances are entitled to quasi-judicial immunity as a matter of federal law. We hold that federal quasi-judicial immunity parallels state quasi-judicial immunity for these actors. The judgment of the District Court with regards to Kathleen Donovan ("Donovan"), the conservator, Jonathan Newman ("Newman"), Daniel Gross's ("Gross") court-appointed attorney, and Grove Manor Nursing Home, Inc. ("Grove Manor"), the nursing home in which Gross was housed, as to the federal claims and, with regards to Donovan and Newman, as to the state claims is therefore VACATED and the case REMANDED for further proceedings not inconsistent with this opinion.

**BACKGROUND**

The facts necessary to understand this opinion are set forth below. A fuller account of the factual background is available in our certification opinion, *Gross v. Rell* ("*Gross I*"), 585 F.3d 72 (2d Cir. 2009). The allegations of the complaint are accepted as true in this recitation.

Gross, an octogenarian resident of the state of New York, sought treatment in a hospital in Waterbury, Connecticut, where his daughter lived. While there, a hospital employee filed an application for appointment of a conservator in Waterbury Probate Court for reasons unknown.

The Probate Court appointed Newman to represent Gross in the involuntary conservatorship action. Despite the fact that the hearing did not conform to the proper notice procedure, that Gross was not a Connecticut resident, and that Gross appeared to be alert and

3

intelligent at the time of hearing, Newman concluded that there was no legal basis to deny the application.

On September 1, 2005, the Probate Court appointed Donovan as conservator of Gross's person and estate. A week or two later, Donovan placed Gross in a "locked ward" in Grove Manor Nursing Home. Gross remained captive in Grove Manor for roughly ten months, and during that time, numerous restrictions were placed upon him, including limits to the duration and circumstances of visits with his daughter.

On June 9, 2006, Gross filed a petition for a writ of habeas corpus with the Connecticut Superior Court. Referring to Gross's conservatorship as "a terrible miscarriage of justice," the court granted the writ.

Gross filed the instant suit in the District of Connecticut. The complaint contained both federal and state claims against a number of defendants; only those claims at issue today are discussed in this opinion. Gross filed state and federal law claims against Donovan and Newman and federal claims against Grove Manor. The District Court dismissed these claims reasoning that all three actors enjoyed quasi-judicial immunity. Gross appealed.

We held that Gross' appeal depended upon unresolved questions of state and federal law regarding the scope of quasi-judicial immunity. *Gross I*, 585 F.3d at 96. We certified the following questions to the Connecticut Supreme Court:

1. Under Connecticut law, does absolute quasi-judicial immunity extend to conservators appointed by the Connecticut Probate Courts?

2. Under Connecticut law, does absolute quasi-judicial immunity extend to attorneys appointed to represent respondents in conservatorship proceedings or to attorneys appointed to represent Conservatees?

We also observed that resolving whether Donovan, Newman, and Grove Manor enjoyed quasi-judicial immunity as a matter of federal law required further information regarding the role

4

these actors played in the state system. The Supreme Court has advised that we can determine whether an actor is entitled to quasi-judicial immunity by reference to six factors described in *Cleavinger v. Saxner*:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

474 U.S. 193, 202 (1985). We sought guidance as to how to apply these factors in determining the availability of federal quasi-judicial immunity in a third certified question:

> 3. What is the role of conservators, court-appointed attorneys for conservatees, and nursing homes in the Connecticut probate court system, in light of the six factors for determining quasi-judicial immunity outlined in *Cleavinger v. Saxner,* 474 U.S. 193, 201-02 (1985)?

The Connecticut Supreme Court accepted our certified questions and on April 3, 2012, issued an opinion. *Gross v. Rell* ("*Gross II*"), 304 Conn. 234 (2012). It held that none of the types of actors here enjoy absolute quasi-judicial immunity as a matter of Connecticut law. It held that "conservators are entitled to quasi-judicial immunity from liability for acts that are authorized or approved by the Probate Court." *Id*. at 253. When conservators act pursuant to the authorization or approval of the Probate Court, the court reasoned, "they function *as* the Probate Court." *Id*. at 252. Outside of such situations, however, conservators in the Connecticut system function as fiduciaries of the conservatee and may be held personally liable. *Id*. at 253-54.

With regards to court-appointed attorneys for conservatees, the Connecticut Supreme Court concluded that such attorneys should enjoy no immunity as a matter of Connecticut law. It observed,

> [T]he primary purpose of the statutory provision of [Conn. Gen. Stat.] § 45a-649 requiring the Probate Court to appoint an attorney if the respondent [*i.e.*, an individual who is the subject of conservatorship proceedings prior to the imposition of a conservator] is unable to obtain one is to ensure that respondents

and conservatees are fully informed of the nature of the proceedings and that their articulated preferences are zealously advocated by a trained attorney both during the proceedings and during the conservatorship. The purpose is not to authorize the Probate Court to obtain the assistance of an attorney in ascertaining the respondent's or conservatee's best interests. Because the function of such court-appointed attorneys generally does not differ from that of privately retained attorneys in other contexts, this consideration weighs heavily against extending quasi-judicial immunity to them.

*Id*. at 264-65. It also contrasted court-appointed attorneys for conservatees with court-appointed attorneys for children, noting that court-appointed attorneys for children are called upon to play dual roles, "to assist the court in serving the best interests of the child and to function as the child's advocate." *Id*. at 267. It emphasized that these roles "are not easily disentangled." *Id*. Thus, court-appointed attorneys for conservatees should enjoy no quasi-judicial immunity. *Id*. at 265-66.

Finally, the Connecticut Supreme Court made several observations about the role of nursing homes that house conservatees in the Connecticut legal system. After noting that "the Probate Court does not have the statutory authority to issue injunctive orders to third parties to carry out its decisions on behalf of a conservatee," the court stated that because Grove Manor was not party to the conservatorship hearing, Grove Manor "[was] not acting as the Probate Court's agent when it complie[d] with the conservator's instructions." *Id*. at 277-78. The actions of Grove Manor, therefore, were not an extension of the authority of the Probate Court and should not, in the opinion of the Connecticut Supreme Court, be entitled to quasi-judicial immunity.

The case returned to us for consideration of the remaining questions of federal law. We have had the benefit of supplemental briefing from the parties on the extent to which federal quasi-judicial immunity should apply in light of the Connecticut Supreme Court's opinion.

6

**DISCUSSION**

The Connecticut Supreme Court has advised us of the limits of state quasi-judicial immunity. We adopt its analysis and remand the state law claims against Donovan and Newman to the District Court for further proceedings. Gross did not appeal the dismissal of his state law claims against Grove Manor.

We next consider the District Court's holding on the motion to dismiss that Donovan, Newman, and Grove Manor enjoy federal quasi-judicial immunity for the federal law claims. On an appeal from a grant of a motion to dismiss, we review de novo the decision of the district court. *Capital Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214, 219 (2d Cir. 2012). We accept all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 36 (2d Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Gross brings suit pursuant to 42 U.S.C. § 1983. Congress, in enacting § 1983, "expressed no intention to do away with the immunities afforded state officials at common law." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258 (1981). Certain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is "necessary to protect the judicial process." *Burns v. Reed*, 500 U.S. 478, 485 (1991). In determining whether a particular actor is entitled to quasi-judicial immunity, we must ensure that our decisions are "predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and interests behind it." *Id*. (quoting *Imbler v. Pachtman*, 424 U.S. 409, 421 (1976)). "[T]he official seeking absolute immunity bears the burden of showing that such

7

immunity is justified for the function in question." *Id*. at 486. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id*. at 486-87. We must determine whether Donovan, Newman, and Grove Manor are entitled to quasi-judicial immunity as a matter of federal law and consider each defendant in turn.

**I.      Donovan**

The Connecticut Supreme Court held that conservators such as Donovan "are entitled to quasi-judicial immunity from liability for acts that are authorized or approved by the Probate Court." *Gross II*, 304 Conn. at 253. Donovan argues that we should adopt a broader federal quasi-judicial immunity. She argues that conservators should be entitled to quasi-judicial immunity "for all actions undertaken within their statutory authority," a position espoused by three dissenting justices of the Connecticut Supreme Court, *id*. at 282 (McLachlan, *J.*, dissenting), or, in the alternative, that conservators should enjoy immunity "for all actions that are reasonably necessary to fulfill the [Probate] Court's directives."

The dissenters, upon whose opinion Donovan relies, differed from the majority primarily in their view of the role of conservators in the Connecticut system. They believe that the conservator serves as an agent of the Probate Court to "safeguard[] the best interests of the conserved person . . . so long as he is acting within his statutory authority." *Id*. The majority, by contrast, held that a conservator acts as an agent of the Probate Court only when their actions are authorized or approved by the Probate Court. *Id*. at 253. While the dissenting opinion presents a thoughtful analysis of the difficult issues at stake in this case, we are bound by the majority's holding regarding Connecticut state law as to the scope of the agency relationship between Donovan and the Probate Court.

Donovan also argues that federal authority supports the proposition that the scope of her federal immunity should be expanded beyond what Connecticut law allows. In so arguing, Donovan relies principally upon *Cok v. Cosentino*, 876 F.2d 1 (1st Cir. 1989). There, the First Circuit held that conservators of marital assets in a divorce proceeding "have absolute quasi-judicial immunity for those activities integrally related to the judicial process." *Id*. at 3. Such immunity, like the immunity enjoyed by judges, "would fail to attach only when such persons perform acts which are clearly outside the scope of their jurisdiction." *Id*. In reaching this decision, however, the First Circuit found that the conservator in question "functioned as [an] agent[] of the court." *Id*. The First Circuit's approach is thus consistent with the Connecticut Supreme Court's approach because under both conservators enjoy quasi-judicial immunity when they act as agents of the court.

Also consistent with the Connecticut Supreme Court's approach is the jurisprudence of our sister circuits with regards to the scope of immunity of a bankruptcy trustee. A bankruptcy trustee is charged with safeguarding the assets of the bankruptcy estate under court supervision and thus has responsibilities both toward the estate and the court. Bankruptcy trustees are generally immune to the extent that they are acting with the approval of the court. *See, e.g.*, *United States v. Hemmen*, 51 F.3d 883, 891 (9th Cir. 1995) (bankruptcy trustees usually enjoy quasi-judicial immunity, but only for actions that "arise out of [their] duty to protect the assets of the estate"); *Gregory v. United States*, 942 F.2d 1498, 1500 (10th Cir. 1991) (bankruptcy trustee enjoys absolute immunity when executing "facially valid judicial orders"); *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989) ("Bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order.").

9

Donovan argues that a broader quasi-judicial immunity is necessary for conservators to feel free to perform their duties without fear of vexatious litigation. The simplest answer to this objection is that the Connecticut Supreme Court, which is much more versed in the intricacies of Connecticut law and the Connecticut legal system than we, disagrees. The United States Supreme Court has also advised that we are to be "quite sparing in our recognition of absolute immunity" and that we are not "to extend it any further than its justification would warrant." *Burns*, 500 U.S. at 487 (internal quotation marks omitted). We believe that the holding of the Connecticut Supreme Court is in keeping with this dictate. Donovan's vague threats of impaired job function do not suffice to constitute the substantial showing necessary for us to find that quasi-judicial immunity attaches when she acted without the authorization or approval of the Probate Court. We therefore hold that Donovan is immune from suit only to the extent that she acted with the authorization or approval of the Probate Court. Our holding, however, is informed by the Connecticut Supreme Court's description of the role of its conservators. We do not opine regarding the availability of quasi-judicial immunity for conservators in other states.

**II.     Newman**

The Connecticut Supreme Court held that attorneys for conservators do not enjoy quasi-judicial immunity from suit. This holding is consistent with the Supreme Court's holding that court-appointed attorneys in criminal trials do not enjoy absolute immunity as a matter of federal common law. *Ferri v. Ackerman*, 444 U.S. 193, 204-05 (1979). In so holding, the Supreme Court reasoned that "the primary office performed by appointed counsel parallels the office of privately retained counsel," who may be sued by clients. *Id*. at 204. The Connecticut Supreme Court similarly reasoned that attorneys for conservatees do not differ in function from privately retained counsel. *Gross II*, 304 Conn. at 264-65.

10

Newman does not argue that he should enjoy a broader immunity as a matter of federal law than he does as a matter of Connecticut law. Newman asks only that we clarify that he is still entitled to raise as a defense that he did not breach his duty to his client. Newman is, of course, entitled to raise such a defense before the District Court, and we express no opinion as to whether such a defense will succeed as a matter of fact or law.

**III.    Grove Manor**

Finally, we consider the extent to which Grove Manor enjoys quasi-judicial immunity. The Connecticut Supreme Court advised us that the Probate Court was without authority to issue orders that were binding upon third parties such as Grove Manor. *Gross II*, 304 Conn. at 277. It concluded, therefore, that Grove Manor was not acting as the Probate Court's agent in caring for Gross and that it stood in the same relationship with Donovan as it would with any ordinary client, which is to say that it could refuse her orders. *Id*. at 277-78. Because Grove Manor was not "performing the judicial function of the Probate Court" by housing Gross, it is not, in the Connecticut Supreme Court's view, entitled to quasi-judicial immunity. *Id*. at 279.

Nor would Grove Manor be entitled to quasi-judicial immunity, even in the absence of a binding court order, if Grove Manor had believed that its actions were sanctioned by court order. The mere fact that an individual believed that her actions were sanctioned by court order is not sufficient to confer quasi-judicial immunity. *See Groh v. Ramirez*, 540 U.S. 551, 563-65 (2004) (analyzing whether officers who executed a facially invalid warrant could be held liable in terms of qualified immunity); *Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir. 1998) (holding by a divided panel that a prison doctor complying with an invalid court involuntary medication order was entitled to qualified, but not absolute quasi-judicial immunity).

11

Indeed, Grove Manor concedes that it is not entitled to quasi-judicial immunity. We agree. As with Newman, Grove Manor remains entitled to raise any other defense, such as qualified immunity, before the District Court.

**CONCLUSION**

For the foregoing reasons, the judgment of the District Court is VACATED with regards to Donovan, Newman, and Grove Manor on the federal claims and with regards to Donovan and Newman on the state law claims, and the case is REMANDED for further proceedings not inconsistent with this opinion.